IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                        Criminal Action No.: 5:17-CR-9

DAVID MALLICONE,

    Defendant.

## REPORT AND RECOMMENDATION

**I.    INTRODUCTION**

The Defendant is a convicted felon and therefore prohibited from possessing a firearm. On April 4, 2017, the Grand Jury indicted him for two counts of unlawful possession of a firearm as well as a forfeiture allegation.

The Defendant filed two motions to suppress evidence. The Court held a hearing regarding these motions on July 10, 2017. The Defendant appeared in person and by his counsel Brendan S. Leary, Esq. The Government appeared through its counsel Stephen L. Vogrin.

The Court is persuaded by each of the Defendant's motions and recommends that they be granted.

**II.    FINDINGS OF FACT**

On January 25, 2017, the police stopped a vehicle in which the Defendant was riding as a passenger. The vehicle was stopped in the rear parking lot of Roc N Franni's, a bar owned by the Defendant's wife, Francine Pope. While the Defendant was detained during the traffic stop about two or three police officers went into Roc N Franni's to talk to Ms. Pope.

The officers assert that they went to Roc N Franni's that morning to investigate a bar fight which occurred on January 18, 2017, one week earlier. The fight caused serious injuries to

one of the patrons requiring him to be life-flighted to a nearby hospital. Neither the Defendant nor his wife were implicated in the fight. The police, however, asked Ms. Pope if she had any security cameras which may have recorded the fight. Ms. Pope explained that the cameras at the bar were "dummy" cameras and were not functional. This small group of officers left the bar after a relatively uneventful meeting.

After the officers left, Ms. Pope took her dog behind the bar for a walk. When she walked outback she saw about five officers conducting the traffic stop and the Defendant in the passenger seat. She decided not to approach, however, she watched from behind the bar. Ms. Pope returned inside, after watching for about an hour and a half, and found a number of police officers in her bar. The testimony regarding the number of officers in the bar ranged from six to fifteen officers.

The officers again questioned Ms. Pope regarding the January 18 fight and her camera system. Ms. Pope walked with the officers around the bar showing them the dummy cameras. At some point, Ms. Pope and the officers proceeded to the basement. In the dimly lit basement the officers observed a tarp which created a makeshift room. In the makeshift room was some old furniture including a single bed and a couch. The officers also observed a shotgun case. The officers commented to Ms. Pope that the Defendant, as a convicted felon, is prohibited from possessing a firearm. At that point, Ms. Pope asked the officers to leave which they did.

The officers obtained a search warrant to search the bar based on the shotgun they observed in the basement. They also obtained a search warrant to search a home located at 101 Emma Way. This is the Defendant's childhood home which he and his four sisters inherited and now jointly own. Only one of the Defendant's sisters and her two children live in the home. In

the home the police found a number of firearms in a locked room. Based on several of pieces of evidence the Government argues that the contents of the locked room are the Defendants.

The critical question here is whether Ms. Pope gave consent for the officers to proceed to the basement of the bar. She testified that she was coerced and as soon as she opened the basement door about six officers rushed passed her down the stairs. The officers testified that Ms. Pope escorted two officers down the stairs. Blunda Summers, a former bar tender at Roc N. Franni's testified that two officers were about six inches behind Ms. Pope and escorted her to the basement. The witnesses agree, however, that the officers never explicitly told Ms. Pope that she could withdraw her consent and end the search.

### III. DISCUSSION

The Defendant filed two motions to suppress. The Court is persuaded by both motions. The Court addresses the motion to suppress the search of the bar in Part A and the motion to suppress the search of the home in Part B.

#### A. **Defendant's [ECF No. 20] Motion to Suppress Evidence Seized at Business**

The Government argues that Ms. Pope consented to the search of the basement and, even if she did not, the *Leon* good faith exception saves the search. The Court is unpersuaded by each argument.

##### 1. *The Leon Good Faith Exception Does Not Apply*

The search warrants are based on the discovery of a firearm in plain view in the basement. The Government argues that even if the search of the basement was illegal it is saved by the "good faith" exception established in *United States v. Leon*, 468 U.S. 897 (1984). The *Leon* exception, however, applies when the officers relied on a search warrant and that search warrant was unsupported by probable cause. Here, the issue is not whether the search warrant

was supported by probable cause. Rather, the issue is whether the evidence cited in the search warrant—the firearm in the basement—was discovered during an illegal search. Thus, the *Leon* exception does not apply.

Therefore, if the entry into the basement constitutes a Fourth Amendment violation then the Court must "suppress evidence that is the indirect product of the illegal police activity as 'fruit of the poisonous tree.'" *United States v. Oscar-Torres*, 507 F.3d 224, 227 (4th Cir. 2007) (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

### 2.   *Ms. Pope Did Not Consent to a Search*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is consent. Indeed, "[i]t is well-settled under the Fourth Amendment that a search conducted pursuant to valid consent does not require either probable cause or a warrant." *United States v. Church*, No. 3:16cr92, 2017 U.S. Dist. LEXIS 8431, at *11 (E.D. Va. Jan. 20, 2017).

"[T]he determination of consent to search is subjective. The Supreme Court has stated that the question whether consent is in fact voluntary 'is to be determined by the totality of all the circumstances, and is a matter which the Government has the burden of proving." *United States v. Wilson*, 895 F.2d 168, 171 (4th Cir. 1990) (citing *United States v. Mendenhall*, 446 U.S. 544, 558 (1980)).

"In viewing the totality of the circumstances, it is appropriate to consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)." *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996) (citations omitted).

There is a "difference between voluntary consent to a request versus begrudging submission to a command." *United States v. Robertson*, 736 F.3d 677, 680 (4th Cir. 2013). The Court finds that the Government has failed to meet its burden of proving that Ms. Pope voluntarily consented to the search. The police created an atmosphere where it would be difficult, if not nearly impossible, for Ms. Pope to refuse a search. Indeed, the police presence here was overwhelming.

Ms. Pope observed about five police officers detain her husband for an extended period. She returned to the bar to find a gathering of officers. While the number of officers in the bar is in dispute, even the low estimate of six officers, is an intimidating presence to one individual. Moreover, the search occurred at her business in front of patrons. Thus, Ms. Pope had an incentive to cooperate and deescalate the situation regardless of how strongly she wished to refuse.

The Court finds that Blunda Summers was an impartial and credible witness. Because she is no longer an employee of Roc N Franni's she has little incentive to misstate the facts. She observed Ms. Pope and the officers proceed down the stairs. Ms. Summers testified that the officers "escorted" Ms. Pope down the stairs.

Furthermore, the officers never informed Ms. Pope that she could refuse the search which is "highly relevant." *United States v. Wilson*, 895 F.2d 168, 172 (4th Cir. 1990).

5

Thus, the totality of the circumstances shows that Ms. Pope did not voluntarily consent to the search of the basement.

    **B.**    <u>**Defendant's [ECF No. 22] Motion to Suppress Evidence Seized at Home**</u>

The Defendant raises three arguments as to why the Court should suppress the search of 101 Emma Way. First, the search warrant for 101 Emma way was based on an illegal search of the bar. Second, the statement in the search warrant affidavit that the officers "located information" that the Defendant "maintains" a separate residence at 101 Emma Way is too vague to constitute probable cause. Third, there is no nexus between the discovery of firearms at the bar and the search of the home.

As discussed more fully above, the Court is persuaded by the Defendant's first argument—that the search of the basement was illegal because Ms. Pope did not consent. Thus, the fruits of this search should be suppressed as fruit of the poisonous tree. Therefore, the Court will not reach the Defendant's second and third arguments.

**IV.**    **RECOMMENDATION**

The Court **RECOMMENDS**:

1.    The Defendant's [ECF No. 20] Motion to Suppress Evidence Seized at Business be **GRANTED**.

2.    The Defendant's [ECF No. 22] Motion to Suppress Evidence Seized at 101 Emma Way be **GRANTED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: July 18, 2017             /s/ *James E. Seibert*
                                  JAMES E. SEIBERT
                                  U.S. MAGISTRATE JUDGE