# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING

**UNITED STATES OF AMERICA**

    Plaintiff,

v.                                   **CRIMINAL ACTION NO. 5:17-CR-9**
                                                **(BAILEY)**

**DAVID MALLICONE,**

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

Pending before this Court is the Report and the Report and Recommendation of United States Magistrate Judge James E. Seibert. By Local Rule, this action was referred to Magistrate Judge Seibert for submission of a proposed report and recommendation ("R&R"). Magistrate Judge Seibert filed his R&R on July 18, 2017 [Doc. 26]. In that filing, the magistrate judge recommends that this Court grant the defendant's Motion to Suppress Evidence Seized at Business [Doc. 20], filed June 21, 2017 and Motion to Suppress Evidence Seized at 101 Emma Way [Doc. 22], filed June 23, 2017.

Pursuant to 28 U.S.C. § 636 (b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. **Thomas v. Arn**, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo*

1

review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Seibert's R&R were due on or before August 1, 2017. Upon timely motion by the Government [Doc. 27], this Court extended the due date for objections to August 3, 2017 [Doc. 30]. The Government filed objections in a timely manner on August 3 [Doc. 31]. Accordingly, this Court will review the R&R under a *de novo* standard.

In objecting to the R&R, the Government insists that this Court should hold a second evidentiary hearing. This Court finds, however, that Magistrate Judge Seibert's credibility findings are supported by the record. Accordingly, this Court is clearly not required to conduct a second hearing to consider the credibility of the witnesses. In fact, the Supreme Court of the United States held in 1980 that "to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts." **United States v. Raddatz**, 447 U.S. 667, 676 n. 3 (1980). Instead, the Supreme Court explained that "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *Id.* at 676 (citation omitted); *see also* **Proctor v. State Gov. of N.C.**, 830 F.2d 514, 518 n. 2 ("The Supreme Court [in **Raddatz**] ruled that a 'de novo determination' is not necessarily the same as a de novo hearing and that the decision to rehear testimony is within the sole discretion of the district judge, even as to those findings based on the magistrate's

2

judgment as to the credibility of witnesses before him."). Finally, the Supreme Court found it "unlikely that a district judge would *reject* a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal," noting that "to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach." **Raddatz.** 447 U.S. at 681 n. 7 (emphasis in original).

In **United States v. Powell**, 628 F.3d 1254, 1257 (11th Cir. 2010), the Eleventh Circuit held that a district court's failure to hold a new hearing prior to rejecting the magistrate judge's credibility determination violated due process. In so holding, the Eleventh Circuit stated as follows:

> To adequately determine the credibility of a witness the fact finder must observe the witness. This requirement is satisfied either by the district judge accepting the determination of the magistrate after reading the record, or by rejecting the magistrate's decision and coming to an independent decision after hearing the testimony and viewing the witnesses.

*Id.* at 1257 (alterations, citations, and quotations omitted). As such, "[t]he first step is for the district judge to review the record, including the transcript, and to determine whether the entire record supports the magistrate judge's findings. If the magistrate judge's findings are supported by the record, the finding can be adopted by the district judge. If the magistrate judge's finding could not be adopted on the basis of the record, then the district judge would hold an additional hearing and make his own determination." **United States v. Jones**, 2011 WL 2160339, *5 (C.D. Ill. June 1, 2011); *see also* **Johnson v. Knable**,

3

1991 WL 87147, *1 (4th Cir. May 28, 1991) ("To conduct proper *de novo* review when testimony calling into question a witness's credibility is dispositive of a case, the appellate court must be satisfied that the district judge has exercised his non-delegable authority by considering the actual testimony, and not merely by reviewing the magistrate judge's report.").

In this case, the Court has reviewed the entire record, including the transcript and exhibits, and finds that the record supports Magistrate Judge Seibert's credibility finding regarding the above-quoted portion of Patrolman Chrisman's testimony. Therefore, there is no need for an additional hearing. Accordingly, the Court **OVERRULES** the defendant's Objections to the extent he argues that Patrolman Chrisman was not credibly affected by his failure to signal.

As noted by Judge Seibert, on January 25, 2017, the police stopped a vehicle in which the defendant was riding as a passenger. The vehicle was stopped in the rear parking lot of Roc N Franni's, a bar owned by the defendant's wife, Francine Pope. While the defendant was detained during the traffic stop two or three police officers went into Roc N Franni's to talk to Ms. Pope.

The officers assert that they went to Roc N Franni's that morning to investigate a bar fight which occurred on January 18, 2017, one week earlier and which caused serious injuries to one of the patrons requiring him to be life-flighted to a nearby hospital. Neither the defendant nor his wife were implicated in the fight. The police, however, asked Ms. Pope if she had any security cameras which may have recorded the fight. Ms. Pope explained that the cameras at the bar were "dummy" cameras and were not functional.

4

This small group of officers left the bar after a relatively uneventful meeting.

After those officers left, Ms. Pope took her dog behind the bar for a walk. When she walked outback she saw about five officers conducting the traffic stop and the defendant in the passenger seat. She decided not to approach, choosing to watch from behind the bar. Ms. Pope returned inside, after watching for about an hour and a half, and found a number of police officers in her bar. The testimony regarding the number of officers in the bar ranged from six to fifteen officers.

The officers again questioned Ms. Pope regarding the January 18 fight and her camera system. Ms. Pope "gladly" walked with the officers around the bar showing them the dummy cameras and the lack of recording equipment.

At some point, Ms. Pope and the officers proceeded to the basement. In the dimly lit basement, the officers observed a tarp which created a makeshift room. In the makeshift room was some old furniture including a single bed and a couch. The officers also observed a shotgun case. The officers commented to Ms. Pope that the defendant, as a convicted felon, is prohibited from possessing a firearm. At that point, Ms. Pope asked the officers to leave which they did.

The officers obtained a search warrant to search the bar based on the shotgun they observed in the basement. They also obtained a search warrant to search a home located at 101 Emma Way. This was the defendant's childhood home which he and his four sisters inherited and now jointly own. Only one of the defendant's sisters and her two children live in the home. In the Emma Way house, the police found a number of firearms in a locked

room.  Based on several of pieces of evidence, the Government argues that the contents of the locked room are the defendants.

The critical question here is whether Ms. Pope gave consent for the officers to proceed to the basement of the bar.  She testified that she was coerced and as soon as she opened the basement door about six officers rushed passed her down the stairs.  The officers testified that Ms. Pope escorted two officers down the stairs.  Blunda Summers, a former bar tender at Roc N. Franni's, testified that two officers were about six inches behind Ms. Pope and escorted her to the basement.  The witnesses agree, however, that the officers never explicitly told Ms. Pope that she could withdraw her consent and end the search.

In his R&R, Judge Seibert found the issue of consent was the only issue and rejected the Government's reliance on **United States v. Leon**, 468 U.S. 897 (1984).  As noted by the magistrate judge, the **Leon** exception, however, applies when the officers relied on a search warrant and that search warrant was unsupported by probable cause.  Here, the issue is not whether the search warrant was supported by probable cause.  Rather, the issue is whether the evidence cited in the search warrant—the firearm in the basement—was discovered during an illegal search.  Thus, the **Leon** exception does not apply.

If the entry into the basement constitutes a Fourth Amendment violation then the Court must "suppress evidence that is the indirect product of the illegal police activity as 'fruit of the poisonous tree.'" **United States v. Oscar-Torres**, 507 F.3d 224, 227 (4th Cir. 2007) (citing **Wong Sun v. United States**, 371 U.S. 471, 488 (1963)).

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." ***Katz v. United States***, 389 U.S. 347, 357 (1967). One such exception is consent. Indeed, "[i]t is well-settled under the Fourth Amendment that a search conducted pursuant to valid consent does not require either probable cause or a warrant." ***United States v. Church***, 232 F.Supp.3d 831, 837 (E.D. Va. 2017), citing ***Schneckloth v. Bustamonte***, 412 U.S. 218, 219 (1973).

"For a consent search to be valid, the search must be within the scope of the consent . . .." ***Church***, *supra,* 232 F. Supp. 3d at 838.

"[T]he determination of consent to search is subjective. The Supreme Court has stated that the question whether consent is in fact voluntary 'is to be determined by the totality of all the circumstances, and is a matter which the Government has the burden of proving." ***United States v. Wilson***, 895 F.2d 168, 171 (4th Cir. 1990) (citing ***United States v. Mendenhall***, 446 U.S. 544, 558 (1980)).

"In viewing the totality of the circumstances, it is appropriate to consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)." ***United States v. Lattimore***, 87 F.3d 647, 650 (4th Cir. 1996) (citations

7

omitted).

There is a "difference between voluntary consent to a request versus begrudging submission to a command." **United States v. Robertson**, 736 F.3d 677, 680 (4th Cir. 2013). This Court finds that the Government has failed to meet its burden of proving that Ms. Pope voluntarily consented to the search. The police created an atmosphere where it would be difficult, if not nearly impossible, for Ms. Pope to refuse a search. Indeed, the police presence here was overwhelming.

Ms. Pope observed about five police officers detain her husband for an extended period. She returned to the bar to find a gathering of officers. While the number of officers in the bar is in dispute, even the low estimate of six officers, is an intimidating presence to one individual. Moreover, the search occurred at her business in front of patrons. Thus, Ms. Pope had an incentive to cooperate and de-escalate the situation regardless of how strongly she wished to refuse. In addition, she was originally asked to point out to the officers the dummy surveillance cameras, which she "gladly" did. In addition, she showed them the lack of recording equipment. She was not asked for permission to search the entire bar, especially the basement area. The Government has yet to advance a rationale for the officers to search the basement. They could not seriously believe that there was evidence related to the bar fight a week earlier. The officers clearly wished to conduct a fishing expedition, and there is no evidence that Ms. Pope consented to such an unlimited search.

The Court finds that Judge Seibert's finding that Blunda Summers was an impartial and credible witness is supported by the evidence. Because she is no longer an employee

of Roc N Franni's she has little incentive to misstate the facts.  She observed Ms. Pope and the officers proceed down the stairs.  Ms. Summers testified that the officers "escorted" Ms. Pope down the stairs.

Furthermore, the magistrate judge's finding that the officers never informed Ms. Pope that she could refuse the search is supported by the evidence and is "highly relevant." **United States v. Wilson**, 895 F.2d 168, 172 (4th Cir. 1990).

Upon careful review of the record, it is the opinion of this Court that the magistrate judge's R&R **[Doc. 26]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated therein.  Accordingly, the defendant's Motion to Suppress Evidence Seized at Business [**Doc. 20**] and Motion to Suppress Evidence Seized at 101 Emma Way [**Doc. 22**] are hereby **GRANTED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record.

**DATED:** August 18, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE